UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALQUIYAMAH GHAFUR FAIZ,

     Plaintiff,

v.                            Case No.:  6:22-cv-1978-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## <u>OPINION AND ORDER</u>

Plaintiff Alquiyamah Ghafur Faiz seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.    Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

## B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.    Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on March 12, 2020, alleging disability beginning on March 12, 2020. (Tr. 108, 262-63). The application was denied initially and on reconsideration. (Tr. 108, 123). Plaintiff requested a hearing, and on November 19, 2021, a hearing was held before

Administrative Law Judge Sylvia Alonso ("ALJ").[1] (Tr. 63-105). On January 19, 2022, the ALJ entered a decision finding Plaintiff not under a disability from March 12, 2020, through the date of the decision. (Tr. 11-22).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on August 8, 2022. (Tr. 1-6). Plaintiff filed a Complaint (Doc. 1) on October 27, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 9).

### D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2022. (Tr. 13). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 12, 2020, the alleged onset date. (Tr. 13). At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease, fibromyalgia, migraines, and obesity." (Tr. 13). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 16).

---

[1] A prior hearing was held on July 23, 2021, but the hearing was not recorded, so a subsequent hearing was held on November 19, 2021. (Tr. 11).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the individual can stand and/or walk for six hours in an eight-hour workday; can sit for six hours in an eight-hour workday; can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; can occasionally stoop, kneel, crouch, and crawl; can frequently balance on level surfaces and can occasionally balance on uneven terrain; can tolerate occasional exposure to wetness; and can have no exposure to vibration or hazards.

(Tr. 16-17).

At step four, the ALJ determined that Plaintiff was capable of performing her past relevant work as: (1) a Family Case Worker; and (2) a Case Manager, as actually and generally performed. (Tr. 21). The ALJ also found that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 21).

Alternatively, the ALJ proceeded to step five of the sequential evaluation process and found that considering Plaintiff's age (44 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 21). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1)   Merchandise marker, DOT 209.587-034, light, SVP 2

(2)   Mail sorter, DOT 222.687-022,[2] light, SVP 2

(3)   Routing clerk, DOT 222.587-038, light, SVP 2

(Tr. 22). The ALJ concluded that Plaintiff had not been under a disability from March 12, 2020, through the date of the decision. (Tr. 22).

## II.   Analysis

On appeal, Plaintiff raises four issues:

(1)   Whether the ALJ erred in failing to find Plaintiff's mental impairments severe and in failing to include relevant limitations in the RFC;

(2)   Whether the ALJ erred in failing to include limitations in the RFC for Plaintiff's migraines, subjective complaints of pain, and use of a cane;

(3)   Whether the ALJ erred in finding Plaintiff could perform work with an SVP levels of 2 and 7 and past work, given that the SSA informed Plaintiff that she may not be able to perform her past work but could perform work requiring only a very short on-the-job training period; and

(4)   Whether the ALJ erred in assessing the opinions of Scott Kaplan, Psy.D.

(Doc. 16, p. 1).

### A.   Mental Impairments

Plaintiff argues that the ALJ erred in not finding Plaintiff's mental impairments severe. (Doc. 16, p, 12-13). Plaintiff claims that her multiple mild limitations reflect a severe impairment. (Doc. 16, p. 13). Plaintiff also claims that

---

[2] DOT refers to the *Dictionary of Occupational Titles*.

even if the ALJ's error was harmless, the failure to include additional limitations in the RFC was not. (Doc. 16, p. 15).

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe "if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities" 20 C.F.R. §§ 404.1522(a), 416.922(a). In other words, a severe impairment is an impairment or combination thereof that *significantly* limits a claimant's abilities to perform basic work activities. *See* SSR 85-28, 1985 WL 56856, *4 n.1; 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).

The severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The impairment must also last or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509, 416.920(a)(4)(ii), 416.909. The claimant bears the burden at step two of proving that she has a severe impairment or combination of impairments. *O'Bier v. Comm'r of Soc. Sec. Admin.*, 338 F. App'x 796, 798 (11th Cir. 2009).

This inquiry "acts as a filter in that the finding of any severe impairment ... is enough to satisfy the requirement of step two and allow the ALJ to proceed to step

three." *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018) (internal quotations omitted). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec*., 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-842 (11th Cir. 2014) (internal citations omitted).

With this standard in mind, even if the ALJ should have characterized Plaintiff's mental impairments as severe, any error is harmless because the ALJ characterized other impairments – degenerative disc disease, fibromyalgia, migraines, and obesity – as severe. (Tr. 13). The ALJ then advanced to step three of the sequential evaluation. *See Ball*, 714 F. App'x at 993. With step two satisfied, the issue then becomes whether the ALJ considered all of Plaintiff's impairments in assessing the RFC. She did.

In the decision, the ALJ thoroughly discussed Plaintiff's mental impairments when assessing the RFC. The ALJ noted that Plaintiff's mental impairments were effectively managed with treatment and medication adjustments. (Tr. 19, 20). The

ALJ also noted that Plaintiff had not been hospitalized for mental impairments, and the objective medical evidence did not support mental or social limitations. (Tr. 19). In assessing opinion evidence from medical providers, the ALJ noted that Plaintiff interacted appropriately, communicated effectively, was capable of many normal activities of daily living, and was capable of caring for her young grandchild. (Tr. 20). The ALJ also noted that mental status exams performed by Plaintiff's treating medical providers were generally unremarkable. (Tr. 20). Further, her treating mental health provider found Plaintiff's functioning at work was normal, her self-care was normal, and her socialization with others was normal. (Tr. 20). The ALJ also discussed the state agency medical consultants opinions that support the RFC assessment. (Tr. 20). The ALJ thoroughly considered Plaintiff's mental impairments when assessing Plaintiff's RFC.

Plaintiff also claims that the ALJ did not sufficiently explain why limitations for Plaintiff's mental impairment were not included in the RFC relying on *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1251 (11th Cir. 2019). (Doc. 19, p. 6). *Schink* is easily distinguishable from this case. In *Schink*, Plaintiff appealed the denial of his application for disability benefits. *Id.* The District Court affirmed the decision. *Id.* The Eleventh Circuit reversed, finding good cause did not exist to discount two treating physicians' opinions, and substantial evidence did not support a finding that Plaintiff's mental impairments were non-severe. *Id.* Plaintiff claims that the Eleventh

Circuit remanded *Schink* in part because whether severe or not, the administrative law judge was required to consider a plaintiff's mental impairments in the RFC assessment, but failed to do so. (Doc. 16, p. 16). In *Schink* – while using superseded regulations – the Court found that the administrative law judge erred in the RFC assessment by discussing Schink's physical impairments and only mentioning his bipolar disorder with no real discussion of how this mental condition affected the plaintiff's RFC. *Id.* at 1269.

Unlike in *Shink*, the ALJ here thoroughly discussed Plaintiff's mental impairments in assessing the RFC and found that the medical evidence did not support mental or social limitations. (Tr. 19, 20). Substantial evidence supports the ALJ's assessment of Plaintiff's mental impairments and the RFC assessment.

### B.    Migraines, Pain, and Use of a Cane

Plaintiff argues that the ALJ failed to include limitations for Plaintiff's use of a cane, the effects of her migraine headaches, and her subjective complaints of pain in the RFC. An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). Furthermore, the ALJ must "'scrupulously and conscientiously

probe into, inquire of, and explore for all relevant facts.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)). At step four, the task of determining a claimant's RFC and ability to work rests with the administrative law judge and not with a doctor. *Moore v. Comm'r of Soc. Sec.*, 649 F. App'x 941, 945 (11th Cir. 2016); *see also Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014), *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 924 (11th Cir. 2007).

### 1.   Cane

Plaintiff contends that the use of a cane limits a person's ability to ambulate quickly, lift or carry significant weight, and perform postural movements. (Doc. 16, p. 20). Plaintiff testified that she uses a cane daily, inside the house, going down stairs, and sometimes outside the house. (Doc. 16, p. 20). And while the ALJ found Plaintiff's balance somewhat impaired, Plaintiff argues the ALJ did not include the use of a cane in the RFC and found Plaintiff's use of a cane or wheelchair inconsistent with treatment notes showing Plaintiff's gait was normal. (Doc. 16, p, 20).[3]

---

[3] Plaintiff cites one case, *Powell v. Astrue*, 250 F. App'x 960, 964-65 (11th Cir. 2007), in support of the proposition that remand is warranted for an ALJ to consider "among other things, the impact of the claimant's use of a cane on his RFC." (Doc. 16, p. 20). This case, however, dealt with an impairment for incontinence and never mentioned the use of a cane. *See Powell*, 250 F. App'x at 964-65. The Court also notes that the Commissioner cited SSR 96-9p for the proposition that Plaintiff did not meet the requirements of this Ruling as it relates to the use of a cane. (Doc. 21, p. 22). SSR 96-9p applies when a plaintiff is limited to less than a full range of sedentary work. *See* SSR 96-9p, 1996 WL 374185. By contrast, here, Plaintiff is limited to light (not sedentary) work

In the decision, the ALJ discussed Plaintiff's allegation that she used a cane and a wheelchair. (Tr. 17). The ALJ found these allegations inconsistent with the treatment notes that repeatedly showed Plaintiff's gait as normal, she had full strength, and her neurological examinations were unremarkable. (Tr. 19). Thus, the ALJ considered Plaintiff's allegations regarding the use of a cane, but found that the record does not support such use. In essence, Plaintiff invites the Court to reweigh the evidence, which it cannot do. A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021).

Here, the ALJ properly considered Plaintiff's use of a cane and wheelchair, included sufficient reasons to discount such allegations, and was not required to include limitations for assistive devices in the RFC. As a result, substantial evidence supports the ALJ's RFC assessment.

---

with some exceptions. (Tr. 16). Thus, SSR 96-9p is inapplicable here. *See Ecker v. Comm'r of Soc. Sec.*, No. 6:21-cv-352-EJK, 2022 WL 10622380, at *3 (M.D. Fla. Apr. 21, 2022) (collecting cases).

### 2.    Migraine Headaches

Plaintiff argues that even though the ALJ found Plaintiff's migraine headaches to be a severe impairment, he included no relevant limitations for this impairment in the RFC assessment. (Doc. 16, p. 21). Plaintiff testified that she has photophobia, a sensitivity to light, associated with her migraines, which occur four to five time per week. (Doc. 16, p. 21). Plaintiff argues that the ALJ erred in failing to consider her photophobia and how that affects her ability to sustain attention and concentration. (Doc. 16, p. 21).

In the decision at step two, the ALJ found Plaintiff's migraine headaches a severe impairment, and that migraine headaches cause more than minimal limitations in her ability to perform work-related activities. (Tr. 13). The ALJ also found that the limitations from these severe impairments do not preclude all work activity. (Tr. 13-14). The ALJ recounted that Plaintiff testified that she experienced four to five migraine headaches a week. (Tr. 19). Still, the ALJ found that the frequency of her alleged migraine headaches was not supported by the record, "which contains little evidence of actual treatment for migraines." (Tr. 19). Other than Plaintiff's testimony about migraines – which the ALJ found inconsistent with the medical evidence – Plaintiff did not cite any medical evidence during the relevant period that shows actual treatment for migraine headaches. Thus, substantial

evidence supports the ALJ's reasoning not to include additional limitations in the RFC for migraine headaches.

### 3.    Subjective Complaints of Pain

Plaintiff argues that the ALJ did not fully account for Plaintiff's pain in the RFC. (Doc. 16, p. 22). Generally, a claimant may establish that she is disabled through her own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210).

When evaluating a claimant's testimony, the ALJ should consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication to alleviate pain or other symptoms; (5) treatment other than medication for relief of pain or other symptoms; (6) any measures a claimant uses to relieve pain or other symptoms; and (7) other factors concerning a claimant's functional limitations and restrictions due

to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019).

The ALJ should consider these factors along with all the evidence of record. *Ross*, 794 F. App'x 867. If the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395 F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* Such findings "'are the province of the ALJ,' and we will 'not disturb a clearly articulated credibility finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014)). A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

In the decision, the ALJ summarized Plaintiff's allegations of pain. (Tr. 17). The ALJ recounted that Plaintiff alleged back pain, neck pain, headaches, light sensitivity, tender points in her back and legs, and right-hand cramping. (Tr. 17). The ALJ noted that Plaintiff testified that she used medical marijuana and a TENS unit to manage her pain. (Tr. 17). The ALJ also summarized Plaintiff's pain management visits, beginning before the alleged onset date. (Tr. 18). The ALJ noted

that Plaintiff sought treatment for back pain in March 2020 and was prescribed medication to relieve the pain. (Tr. 18, 697-98).

The ALJ also noted that in February 2021, Plaintiff sought emergency room treatment for body pain. (Tr. 18, 852). Plaintiff reported that she stopped going to pain management because the medical provider was reducing her pain medicine dosage. (Tr. 18, 852). She tried using over-the-counter pain medicines, but they were not effective. (Tr. 18, 852). Plaintiff characterized the degree of pain at the emergency room as minimal. (Tr. 852). At the hospital, Plaintiff received pain medication, her pain improved with medication, and she denied any complaints on discharge. (Tr. 856).

As to Plaintiff's subjective complaints, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms was not entirely consistent with the medical and other evidence in the record for the reasons explained in the decision. (Tr. 19). The ALJ then elaborated:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the objective medical evidence indicates the claimant's pain levels have been effectively managed by her treating medical providers with routine follow up and medication. Her BMI is now below 30. The frequency of her alleged migraines is not supported by the record, which contains little evidence of actual treatment for migraines. Her

> allegation of use of a cane or a wheelchair is inconsistent with treatment notes that repeatedly described the claimant's gait as normal. She has full strength and neurological examinations have been unremarkable. The symptoms of the claimant's mental impairments have been effectively managed with treatment and medication adjustments. The claimant has not been hospitalized for a mental impairment. The objective medical evidence does not support mental or social limitations. The claimant's limitations would not preclude the performance of light work or her past relevant sedentary work.

(Tr. 17).

The ALJ supported her findings by stating that Plaintiff statements are inconsistent with the objective medical evidence. The ALJ did not stop there. The ALJ continued that Plaintiff's pain levels have been effectively managed by her treating medical providers with routine follow-ups for medication. The ALJ clearly articulated reasons in assessing Plaintiff's subjective complaints of pain, and this assessment is supported by the medical records in evidence. Thus, substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints.

## C. Explanation of Determination

Plaintiff contends that the SSA repeatedly advised her that her condition may limit her ability to perform her past work, but she could perform work which required only a very short, on-the-job training period. (Doc. 16, p. 26 (citing Tr. 149, 170, 172)). Plaintiff argues that these types of jobs equate to an SVP 1, not an SVP 2 or 7 job, such as her past relevant work or other jobs listed by the ALJ. (Doc. 16, p. 26-27).

Explanations of Determination are prepared by disability examiners. *Martinez v. Kijakazi*, No. 8:20-cv-1025-TPB-AEP, 2021 WL 4482616, at *14 (M.D. Fla. Aug. 23, 2021), *report and recommendation adopted*, No. 8:20-cv-1025-TPB-AEP, 2021 WL 4478248 (M.D. Fla. Sept. 30, 2021) (citing SSA Program Operations Manual System ("POMS") DI 24501.001B(1)(d)(1)-(2)). "Notably, the SSA considers findings made by a state agency disability examiner at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether a claimant is disabled to constitute evidence that is 'inherently neither valuable nor persuasive.'" *Id.* (citing 20 C.F.R. § 404.1520b(c)(2)). And under the regulations, an ALJ need not provide any analysis about how she considered such evidence in rendering a decision. *Id.* (citing 20 C.F.R. § 404.1520b(c)). Thus, the ALJ was not required to consider the Explanations of Determination in rendering the decision.

### D.    Scott Kaplan, Psy.D.'s Opinions

Plaintiff argues that the ALJ failed to properly consider the supportability and consistency factors when finding Dr. Kaplan's opinions mainly unpersuasive. (Doc. 16, p. 31-32). Dr. Kaplan evaluated Plaintiff twice. The first evaluation occurred on September 24, 2020, and was based on a referral to assist in a determination of eligibility for Social Security Disability benefits. (Tr. 789-91). The second evaluation occurred on April 21, 2021, and was based on a referral to conduct a

General Personality Evaluation to see if she was fit psychologically and emotionally to adequately care for her grandchild, over whom she was attempting to gain custody and eventually adopt. (Doc. 16, p. 29; Tr. 77, 988-99).

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given these five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and

consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history,

clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20

C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

In the decision, the ALJ summarized Dr. Kaplan's two opinions. (Tr. 19-20).

> Scott Kaplan, Psy.D., opined the claimant is likely to experience mild impairment understanding one- and two-step tasks, moderate impairment understanding complex tasks, and moderate to marked impairment with getting along in social settings and with adapting (Ex. 11F). The claimant went to see Dr. Kaplan a second time in connection of her obtaining custody of her grandson. At this examination, Dr. Kaplan noted the claimant interacted appropriately and communicated effectively. He opined the claimant is capable of many normal activities of daily living and she is capable of caring for her grandchild.

(Tr. 19-20).

In evaluating Dr. Kaplan's opinions, the ALJ found:

> Dr. Kaplan's opinion that the claimant is capable of activities of daily living and of caring for her grandchild is persuasive because it is consistent with and supported by the objective medical evidence, which indicates the symptoms of the claimant's mental impairments have been effectively managed with treatment and medication adjustments. The remainder of Dr. Kaplan's opinion is unpersuasive because it is inconsistent with and not supported by the objective medical evidence. Mental status exams performed by the claimant's treating medical providers have been generally unremarkable. Dr. Kaplan's opinion appears to be based more on the claimant's subjective reports than objective findings. The claimant has not been hospitalized for a mental impairment. The claimant's mental impairments do not cause moderate or marked limitations. The objective medical evidence does not support mental or social limitations.

(Tr. 20).

Plaintiff first argues that in finding Dr. Kaplan's opinions mainly unpersuasive, the ALJ only found them unsupported because they appear to be based mainly on Plaintiff's subjective reports rather than objective findings. (Doc. 16, p. 31). At the first evaluation, Plaintiff contends Dr. Kaplan conducted a general clinical evaluation with a mental status exam that included a digit span test. (Doc. 16, p. 31). At the second evaluation, Plaintiff contends Dr. Kaplan conducted a clinical interview, mental status examination, and an incomplete sentence blank test. (Doc. 16, p. 31). Plaintiff argues that Dr. Kaplan based his opinions, at least in part, on these objective tests.

In both evaluations, as the ALJ noted, Dr. Kaplan relied a great deal on Plaintiff's subjective statements and complaints especially when determining whether Plaintiff had limitations. At the first evaluation, Dr. Kaplan conducted a mental status examination, and found Plaintiff: oriented to person, place, time, and situation; had clear and logical speech and thought processes; had no evidence of any hallucinations, delusions, or illusions; had adequately developed gross and fine motor coordination; was cooperative; had variable concentration and memory functions based on a Digit Span test; and had a depressed and anxious mood and affect. (Tr. 790). He determined that Plaintiff was competent to manage her own funds. (Tr. 791). He then relied on Plaintiff's subjective statements for much of the remaining evaluation, such as Plaintiff presenting with sleep and appetite

disturbance, reduced energy level, crying spells, hopelessness, helplessness, and anhedonia. (Tr. 790). In his discussion, he started with "[b]ased on the present test results," but then mainly discussed Plaintiff's statements as to her mental health history, such as her mental health treatment, prior diagnoses, and psychotropic medications, rather than relying on any objective testing. (Tr. 791).

In the second evaluation, Dr. Kaplan listed three tests: a clinical interview; mental status examination; and Incomplete Sentence Bank Test – Adult Form. (Tr. 988). While he had a section on test results, Dr. Kaplan basically summarized Plaintiff's statements as to her history of mental illness and her symptoms, as he did in the first evaluation. (Tr. 988). His evaluation findings mainly mirrored his first evaluation. (Tr. 988). He found Plaintiff capable of many normal age-appropriate activities of daily living, could interact appropriately and communicate effectively, found her concentration and task persistence were somewhat variable, and found she experienced depression and anxiety. (Tr. 989). Importantly, he repeatedly found Plaintiff able to care for her grandchild. (Tr. 989).

For both examinations, Dr. Kaplan performed some testing, but Dr. Kaplan also relied heavily on Plaintiff's subjective statements for a history of her mental impairments and for her reports on sleep, appetite, energy level, crying spells, hopelessness, helplessness, and anhedonia. Substantial evidence supports the ALJ's

supportability finding that Dr. Kaplan's opinion relies more on Plaintiff's subjective reports rather than on objective testing.

Plaintiff next argues that the ALJ erred in finding Dr. Kaplan's opinion inconsistent with and not supported by mental status exams performed by Plaintiff's treating medical providers. (Doc. 16, p. 32). As to the consistency of Dr. Kaplan's opinion, the ALJ found it inconsistent with the generally unremarkable metal status exams performed by Plaintiff's treating medical providers. (Tr. 20). In the next paragraph, the ALJ cited Dr. Mirsajadi's treating records, which showed among other things, Plaintiff was cooperative, pleasant, attentive, with normal affect, and had clear thought processes, oriented times 4, intact memory, normal judgment, good insight, and good concentration, or in other words, a generally unremarkable mental status examination. (Tr. 20, 825). As the ALJ noted, Dr. Mirsajadi found Plaintiff had both a normal ability to function at work, and a normal ability to take care of herself. (Tr. 20, 107, 793, 795, 797, 825, 827, 991).

Plaintiff claims that Abdol-Amir Mirsajadi, M.D. diagnosed at times that Plaintiff was anxious, depressed, overwhelmed, labile, apprehensive, panicky, worried, and stressed. (Doc. 16 p. 32).[4] Plaintiff also claims that Ahmad Jingo, M.D. assessed Plaintiff with chronic post-traumatic stress disorder ("PTSD") as did Dr.

---

[4] In support of her argument, Plaintiff cited a record for an exam performed by Dr. Mirsajadi dated after the ALJ's decision. (*See* (Doc. 16, p, 32 (citing Tr. 61)).

Mirsajadi. (Doc. 16, p. 32). Finally, Plaintiff claims that Dr. Pierce Arnold diagnosed Plaintiff with an abnormal mental status. (Doc. 16, p. 32). But these diagnoses alone are insufficient and instead a plaintiff must show the effect of the impairment on her ability to work. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986)). Plaintiff has not done so here. Plus, the ALJ noted many instances of generally unremarkable examinations even with these diagnoses.

The ALJ properly considered the supportability and consistency of Dr. Kaplan's opinion when finding them persuasive as to Plaintiff's activities of daily living and taking care of her grandchild, and in finding them unpersuasive as to the rest of the opinions because they were unsupported by and inconsistent with the medical evidence of record. Substantial evidence supports the ALJ's assessment of Dr. Kaplan's opinions.

## III.   Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 11, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties